*Br.inke:rhoee, C. J.
The facts in this case, so far as it is necessary to state them, in order to a proper understanding of the •question on which the case turns, are substantially these:
The original action was brought on the 14th of December, 1855, ■in the common pleas of Morrow county, by the defendants in error, .as the heirs at law of Thompson T. Davenport, deceased, against ■the plaintiff in error, for the recovery of certain lands described in their petition, and situate in said county, but which formerly, and up to and including the year 1847, were included within the limits •of the county of Delaware.
*163 The defendant below, plaintiff in error, answered, claiming title to said lands in behalf of his wife, Rhoda Hammond, under a judicial sale, and a conveyance in pursuance thereof, made in 1847, to one Lloyd Ady, who subsequently conveyed the same lands to said Rhbda; and he claims to be lawfully in possession in right of his wife. He avers that the judicial sale and conveyance were regularly made, in pursuance of a decree ih chancery rendered by the court of common pleas of Delaware county, at its July term, 1845, and that to the proceeding in chancery, in which said decree was rendered, the plaintiffs below, as the minor heirs of Thompson T. Davenport, deceased, had been duly made parties, by the publication of notice according' to the provisions of the statute then in force and regulating the practice in chancery in that behalf He also annexes a full and authenticated transcript of the record and proceedings in said case in chancery, and makes the same a part ■of his answer.
- It appears from this record that process of subpena was, in the first instance, issued to the sheriff of Delaware county, against the infant defendants by name (here plaintiffs below), which was returned “ not found ” as to them; that thereupon, on leave, the' complainants amended their bill, by averring that said infant defendants had gone to parts unknown, and were non-resident in this state; that the court thereupon, on motion, ordered that notice be given to them by publication in a newspaper named, and published in Delaware county, for six consecutive weeks; that such publication was afterward duly made and proved; that thereupon a guardian ad litem *was appointed for said infant defendants, who appeared and answered; that the case was then referred to a master for examination and report, who, at a subsequent term, reported; whereupon the court approved and. confirmed said report, and •entered the final decree in the case, ordering the sale of the lands now in controversy.
To this answer the plaintiffs below reply, that during all the time from the filing of said bill in chancery until the rendition of said decree, they were residents of the State-, of Ohio; and they deny that they were parties to said proceeding, and aver that they are not bound thereby.
To this reply- the defendant below demurred generally.
The court of common pleas sustained the demurrer, and gave judgment for the defendant below.
*164 Thereupon the plaintiffs below-, to reverse this judgment, prosecuted a petition in error, in the district court, alleging for error,, that the court of common pleas erred in sustaining the demurrer to the reply. The district court reversed the judgment of the common pleas, and this petition in error is filed here to reverse that-judgment of reversal.
The question is, whether, in this collateral proceeding, the decree-in chancery, set out in the record, is conclusive against the plaintiffs below; or whether they may set up a want of jurisdiction as-against them in the chancery proceeding, by proving that, during all the time it was pending, they were in fact residents of this state, and so entitled to notice by personal service of process upon them?
By the seventh section of the act of March 14,1831, “ directing-the mode of proceeding in chancery,” it is provided that, “Where-the complainant shall make several defendants to his petition, who-reside in different counties in this state, the clerk of the court in-which the same is filed, may issue subpenas into the several counties in which defendants are supposed to reside, directed to any proper-officer therein, who shall serve and return the same. And in cases-where any or all of the defendants reside out of this state, the complainant may cause personal service of a subpena, with a copy of the petition; or he may cause notice of the pendency of the petition, containing a summary statement of the object and prayer-^thereof, to be published six consecutive weeks, in some newspaper printed in the county where the petition is filed, if there-be any, and if not, in some newspaper printed in this state, of general circulation in the county.” And by the following section it is-provided that, “Upon return of service of the process, or due proof of notice having been given as aforesaid, the defendants shall be-considered in court.” Swan’s Rev. Stat. of 1841, p. 701.
Under the provisions of this act no order of the court directing-notice by publication, or the manner of giving such notice, seems-to have been necessary; but under a former act, repealed prior to the proceedings in chancery under which the question before us-arises, such order was required; and the practice which grew up-, under that act, of asking and obtaining such orders, continued, more or less, it is believed, until superseded by the code of civil procedure. All all events such an order was made in the case referred to; and it is insisted, in argument, that from the fact of this order for publication having been made, taken in connection with *165 ;the further fact that the court being a court of general equity juris•diction, assumed to take and exercise jurisdiction in the premises, ' the- presumption that a state of fact existed which authorized the •court to assume jurisdiction of the parties otherwise than on the •basis of personal service, is, in-a collateral proceeding, conclusive.
This presents a question of no small difficulty and importance. -In favor of the affirmative of the proposition are arrayed strong considerations of public policy; against are what seem to be obvious principles of natural justice. The question has given rise to ■much discussion and contrariety of opinion elsewhere, and has never been definitely settled by authoritative adjudication on the •exact point in this state. It has. been settled in this state, in respect to domestic judgments of courts of general jurisdiction, that -where it appears from the record that the court has positively found the fact or facts on which its jurisdiction legally rests, the jurisdiction may not afterward be collaterally questioned; that though the judgment may be, or may have been voidable when attacked in a direct proceeding for that purpose, it is not, and may not *be shown collaterally to be void. Callen v. Ellison, 13 Ohio St. 466; and see the remarks of G-holsen, J., in that case. On the other hand, it has been decided that where it affirmatively appears in the record that the defendant was not served with process, or otherwise legally notified, the judgment is void. Moore v. Starks, 1 Ohio St. 369.
In respect to the record we are considering, as before remarked, •there was no necessity for an order of publication. The statute •did not require it. Yet the action of the court was invoked, and it acted—it made the order. What reason could there be for this, if the complainants did not seek thereby to throw upon the court •the burden of finding the alleged non-residence of the infant defendants, and the court did not intend to assume that responsibility? We can see none. Here is a court of our state; a court -of general jurisdiction; the non-residence of certain defendants is ■specifically alleged in the bill; the sheriff of the county returns process “ not served ” as to them; the court order notice to them by publication—an act not only vain, but wrongful, unless satisfied •of the fact of non-residence ; and then proof of publication having been made, proceed to exercise final jurisdiction in the case. While acknowledging the difficulty of the question, and feeling the perplexity which it unavoidably occasions, it yet seems to a *166 majority of the court that overmastering considerations of public: policy require that opposing consideration should yield, and that, such a decree should be held free from liability to indirect attack.
But this conclusion does not rest solely upon general considerations of public policy, irrespective of express declarations of legislative will; for, by the 60th section of the act “ directing the' mode of proceeding in chancery,” before referred to, it is provided that, “ Parties against whom a decree has been rendered, without other notice thán the publication in the newspaper, as _ provided for in this act, may, at any time within five years after the date of the decree, have the said decree opened, and be let in to defend and to a hearing; but before the decree shall be opened, the applicant shall give notice to the original complainant, or his representatives, of the intention to make the application, and shall file a full *answer to the original bill, pay all costs, and make an affidavit that, during the pendency of said suit, he or she received no actual notice thereof, in time to appear in court and object to said decree; provided, that the title to any real or personal estate, the subject of the former decree, which by it, or in consequence of it, shall' have passed into the hands of any bona fide purchaser, shall not be• affected by any proceedings under this section.”
Now, it would seem that the holders of title to the real estate in-, controversy, deriving title thereto “by,” and “in consequence of” the decree in question, are “ bona fide purchasers.” There is nothing in the record, either by way of allegation or proof, to the contrary ; and it seems to me that the indications of legislative policy,, in respect to such purchasers, shining out from the face of this section of the statute, are too plain to be mistaken, and ought to be decisive of a question which, on other grounds alone, might, perhaps, be deemed doubtful. For if, when a decree is opened up, and parties, served by publication only and having had no actual notice, are permitted to defend, the title of bona fide purchasers on the-faith of the decree is held inviolable, a fortiori ought the same inviolability to hold in favor of a like purchaser, where the decree is •collaterally assailed on the same ground, and for the sole purpose of invalidating his title under it.
Judgment of district court reversed, and that of the common, pleas affirmed.
Scott, White, and Welch, JJ., concurred.
*167 Day, J., dissented, being of opinion that there is not enough appearing in the record in question to show, either affirmatively or constructively, that the court had jurisdiction of parties against whom the decree was rendered.