### JOHN MANUEL ET AL. *v.* ROBERT MANUEL.

M., domiciled in Ohio, made a will of personalty in the olographic form (valid
  by the laws of Louisiana), while in New Orleans, on a visit, for business pur-
  poses. He returned to his domicile in Ohio, and died there in 1848. The
  will was sent to New Orleans and there admitted to probate. An authenticated
  copy of the will and probate was brought to Ohio, and admitted to record
  here. On a bill filed for the purpose of setting aside the will, as invalid by
  the laws of this State, held: That the copy of the will was improperly admit-
  ted to record in this State. That by the settled rule of international law, the
  jurisdiction to determine the validity or invalidity of the will belonged to the
  courts of this State; and that the 28th section of the wills act of 1840 (1

Manuel et al. *v.* Manuel.

Curwen, 708), providing for the admission to record in this state of "authenticated copies of wills, executed and proved according to the laws of any state or territory of the United States," relates only to wills *proved* in a court to which the jurisdiction to make original probate in the case properly belongs, under the established rules of law.

IN CHANCERY.—Reserved in the district court of Franklin county.

The complainants filed their bill in chancery in the court of common pleas of Hamilton county, July 26, 1850, as the heirs at law of Thomas Manuel, deceased, against the defendant, Robert Manuel, setting forth that at the November term, 1849, of said court, a paper, purporting to be a copy of the last will and testament of said Thomas Manuel, deceased, admitted to probate in the fifth district court of New Orleans, on the 22d day of August, 1848, was admitted to record in said court of common pleas of Hamilton county, where it was still remaining on record; and averring that the original paper was not the last will and testament of said Thomas Manuel, and was not so executed as to become a will by the laws of Ohio. They make the said Robert Manuel, who is also an heir with them of the said Thomas Manuel, and who claims to be the executor and sole devisee, under said pretended will, a party defendant, and pray that the probate of said will, and the order admitting a copy thereof to record, be set aside, etc.

The defendant answered, affirming the validity of the will, and an issue of *devisavit vel non* was ordered by the court, which was subsequently tried by a jury, and a verdict rendered thereon for the complainants.

After decree pursuant to the prayer of the bill, the case was taken by appeal to the district court, where the same issue was again tried by a jury, and a special verdict rendered by consent.

The evidence offered on the trial, and the special verdict of the jury, showed the following state of facts :

The alleged testator, Thomas Manuel, was a native of Scotland, but emigrated to the State of Ohio, and resided and had

his domicile in the county of Hamilton prior to and at the
date of the alleged will.   He was engaged in a shipping busi-
ness in Cincinnati, which he prosecuted with the south, and
frequently visited New Orleans for business purposes.   That
being about to make a business voyage from New Orleans to
Cuba, he made the following will, in his own handwriting, on
the 3d day of February, 1847 :

"NEW ORLEANS, February 3, 1847.
" The undersigned, in event of his decease, hereby appoints
his brother, Robert Manuel, to hold and control all his prop-
erty and effects belonging to him.
     " (Signed,)                    THOMAS MANUEL."

" The undersigned, in event of his decease, also appoints
his brother, Robert Manuel, to pay R. R. Toy a note of hand
for $1400, odds granted to said Toy on the 12th January,
1847, and five hundred dollars more besides.
     " (Signed,)                    THOMAS MANUEL."

This will, being in the olographic form, was without wit-
nesses.   It was inclosed by the testator in an envelope,
addressed to Robert Manuel, and left with a friend, with
instructions to deliver it to said Robert in the event of his
decease.   It was subsequently forwarded to the testator at
Cincinnati, on his request, and was found among his papers
soon after his death.

At the time of executing said writing, and at the time of
his death, he owned personal property both in New Orleans
and Cincinnati, and died at his domicile, in Hamilton county,
Ohio, in August, 1848, without issue.   Soon after his death,
Robert Manuel, the defendant, by advice of counsel, sent the
will to New Orleans, and procured it to be admitted to pro-
bate and record, in the fifth district court of New Orleans, in
the usual forms.

An authenticated copy of this record of probate was after-
ward, in 1850, presented to the court of common pleas of
Hamilton county, Ohio, and was admitted to record, and re-
corded.

The jury, in their special verdict, say :

" If the court shall be of opinion that the above facts, under the law of the State of Ohio, preclude the said paper writing from being admitted to probate in the State of Louisiana, so as to authorize the admitting to record in the State of Ohio of an authenticated copy, then we find that the authenticated copy now submitted to us is not the last will and testament of the said Thomas Manuel ; but if the court shall be of a contrary opinion, then we find that it is the last will and testament of the said Thomas Manuel."

And the district court thereupon ordered the cause to be reserved to this court for decision.

*Charles Fox*, for complainants, argued :

That the will was improperly admitted to record, and that the order admitting it ought to be set aside, because :

1st. The will being made by a citizen and inhabitant of Ohio, while he was temporarily in New Orleans, is to be governed by the laws of Ohio ; and having no witnesses, is therefore void.

2d. He being an inhabitant of the State of Ohio at the time of his death, it was not competent for the court in New Orleans to admit the will to record there, such court having no jurisdiction.

3d. The admission of the will to record in Louisiana, only affected property in that State, and did not operate beyond the limits of the state.

4th. The law of Ohio allowing copies of wills proved and admitted to record in other states, to be admitted of record and recorded in Ohio, does not apply to wills made by persons domiciled in Ohio, while on a visit to another state, when the testator died in Ohio, and had such will there in his possession.

5th. By the decisions of the courts of Louisiana, the admission to record of a will made in another state, or by a citizen of another state, has no effect except on the property in the State of Louisiana.

In support of the foregoing propositions are cited : Sec. 28 of the wills act (Swan's Stat. of 1841, p. ——) ; *Meese* v. *Keefe*,

10 Ohio Rep. 362; *Bruce* v. *Bruce*, 2 Bos. & Pul. 229, note; *Somerville* v. *Somerville*, 5 Ves. Jr. 786; *Desesbats* v. *Berquier*, 1 Binn. 344, 348; Story's Confl. Laws, secs. 59, 380, 467, 473; 2 Greenl. Ev., secs. 668, 339; *Barnes' adm'r* v. *Brashear*, 2 B. Mon. 381; *Harrison* v. *Nixon*, 9 Pet. 504; *Isham* v. *Gibbons*, 1 Bradf. Sur. Rep. 71, 74; 1 Ib. 93, 415; *Anstruther* v. *Chaleuse*, 2 Sim. 1; *Yates* v. *Thompson*, 3 Clark & Fin. 585; *Grattan* v. *Appleton*, 3 Story's Rep. 755; *Peal* v. *While*, 7 La. Ann. Rep. 449; 1 Jarman on Wills, 49; Toller on Ex'rs, 49, 50; 9 Mass. 543; 5 Pick. 20, 370; *Stewart* v. *Pettees*, 10 Misso. 755; *Wallace* v. *Wallace*, 2 Green's Ch. 616, 618, 619; 9 B. Mon. 449; 11 Ib. 18; 9 Rob. La. Rep. 442; 11 Ib. 196; 11 Mass. 263; *Nat* v. *Coons*, 10 Miss. Rep. 543; *Sturdivant* v. *Neill*, 27 Miss. Rep. 165; *Morris* v. *Morris*, Ib. 851.

*Taft & Perry*, for defendant, argued:

1. An authenticated copy of an effectual probate of a will, made and proved in any state of the United States, according to the laws of such state, properly admitted to record in a probate court of Ohio, is conclusive in the courts of this state. *Crippen* v. *Dexter*, 13 Gray, 231; *Bailey* v. *Bailey*, 5 Cush. 245; *Pungear* v. *Beard*, 14 Ala. Rep. 121; *Thomas* v. *Tanner*, 6 Monroe, 52; 2 Greenl. Ev. 672; 4 Cowen & Hill's Phillips' Ev. 1347; *Wilson* v. *Tappan*, 6 Ohio Rep. 174; secs 12 to 28 of the wills act of 1840; sec. 2 of the act of January 5, 1805, 1 Chase, 402; sec. 12 of the act of February 18, 1808; sec. 14 of the act of February 18, 1831.

2. An authenticated copy of a will, made by a citizen of Ohio in the State of Louisiana, according to the laws and usages of that state, may be admitted to record in the probate court of any county of Ohio, in which there is any property of the deceased; and such authenticated copy, so recorded, shall have the same validity as wills made in Ohio, according to the laws thereof, are declared to have. Story's Confl. Laws, secs. 239, 241, 242, 260, 282, 371b, 371c, 371d, 371e, 372a, 372b, 372f, 383, 384, 424, 437, 439, 441, 470, 171, 473a, 473b, 474, 475, 479, 479a; 1 Burge., Col. & For. Law, pt. 1, chap. 1, pp. 21–24; 4 Ib. pt. 2, ch. 12, pp.

217, 218; *Crippen* v. *Dexter*, 13 Gray, 331; *Bailey* v. *Bailey*, 5 Cush. 245; *Succession of McCandless*, 3 La. Ann. Rep. 579; 26 Barb. 252; *Robert's Will*, 8 Paige, 246, 524-5-6; *Shephard* v. *Caniel*, 19 Ill. 313; *Bailey* v. *Bailey*, 8 Ohio Rep. 239; *Meese* v. *Keefe*, 10 Ohio Rep. 362; *Wells* v. *Cowper*, 2 Ohio Rep. 143; *Mootrie* v. *Hunt*, 3 Bradf. Rep. 322; *Jones* v. *Hunter*, 6 Rob. 235; *Montgomery* v. *Milligan*, 5 S. & M. 151; *Parker* v. *Parker*, 11 Cush. 519.

3. The return of such testator from the State of Louisiana, where such will was made, and his death in the State of Ohio, does not operate to revoke such will. *Traver* v. *Traver*, 9 Pet. 174; *Mootrie* v. *Hunt*, 26 Barb. 252; *Succession of McCandless*, 3 La. Ann. Rep. 579; *Runkle* v. *Gates*, 11 Ia. Rep. 95; Jarman on Wills, ch. 7, sec. 3; 6 Ad. & El. 209; 3 Leigh. 32.

SCOTT, J.—In regard to real estate, it is clear that the law, which governs its descent, is that of the jurisdiction within which it is situated. And it is equally well settled, that it is the law of the country where the deceased was domiciled, at the time of his death, which regulates the succession of his personalty, in case of intestacy. From this it results, as a reasonable consequence, that the laws of the same country must determine whether there is an intestacy in any given case; or in other words, the same law governs the succession both in cases of testacy and of intestacy. Hence, the rule of the common law, that a will of personalty, in order to be valid, must be executed according to the law of the testator's domicile, at the time of his death. The authorities on this subject are so numerous and uniform that the rule must be regarded as well settled. Story's Conflict of Laws, secs. 380, 467; 2 Greenl. Ev., sec. 668; *Desesbats* v. *Berquier*, 1 Bin. 344; *Isham* v. *Gibbons*, 1 Bradford's Sur. Rep. 71; *Moultrie* v. *Hunt*, 23 N. Y. Rep. 394; *Nat* v *Coons*, 10 Missouri Rep. 543; *Sturdivant* v. *Neill*, 27 Miss. Rep. 165, *Wallace* v. *Wallace*, 2 Green's Ch. 618; *Grattan* v. *Appleton*, 3 Story's Rep. 755; *Somerville* v. *Somerville*, 5 Ves. 750; *Price* v. *Dewhurst* 8 Simons, 279; *Stanley* v. *Bernes*, 3 Hag. 373.

Thomas Manuel, the alleged testator, in this case, was domiciled in this state, both at the date of the will in controversy, and when it took effect, if at all, by his death. No question can, therefore, arise in this case, as in *Moultrie* v. *Hunt* (cited *supra*) from a change of domicile after the execution of the will. His will relates wholly to personalty, and its validity is, therefore, beyond all question, dependent on its conformity to the laws of this state.

The particular law which governs the case is, therefore, the wills' act of 1840, which remained in force till after the testator's death.

The second section of that act requires wills to be attested and subscribed in the presence of the testator, by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same. The writing claimed to be a will, in the present case, is wholly wanting in this material requisite, and is therefore invalid as a will, unless the case is taken out of the operation of this section, by some other provision of law.

It is claimed that the writing having been executed and proved in Louisiana, according to the laws of that state, the case is thereby brought within the provisions of the 28th section of the same act, which provides as follows:

"Authenticated copies of wills, executed and proved according to the laws of any state or territory of the United States, relative to any property in this state, may be admitted to record in the court of common pleas of any county in this state, where any part of such property may be situated; and such authenticated copies so recorded, shall have the same validity in law as wills made in this state, in conformity with the laws thereof, are declared to have."

The construction to be given to this section, must evidently control the decision of this case.

In construing statutes, courts are ordinarily to be governed by the plain meaning of the words used by the legislature, and if the sense be apparently plain, it is not to be varied by construction, without strong reason.

Proper regard must be had, however, in construing a part

of a statute to all its parts, and to other concurrent legislation *in pari materia;* and the whole should, if possible, be made to harmonize; and, if the sense be doubtful, such construction should, if possible, be given, as will not conflict with the general principles of law, which it may be presumed the legislature would not intend to disregard or change.

The words of this section of the act are very general. Its language is: " *authenticated copies of wills executed and proved* according to the laws of any state or territory of the United States," etc. This language is sufficiently comprehensive to embrace the case of every will, executed by any person, in any place, in such a manner as to conform to the laws of any state or territory of the United States, and of which probate had been accordingly made in such state or territory. If the statute be so construed, then all wills, valid in any part of the United States, are, in effect, declared valid here.

This construction would evidently go far to nullify the first section of the same act, which limits the testamentary capacity to persons of "*full age,*" etc., if, as is quite probable, the laws of any other state are different on this subject. We know the age of majority varies in different states. It would also, in its application to persons domiciled in this state, nullify the provisions of the second section of the act, which, as we have seen, requires wills to be in writing, etc., " and attested and subscribed by two or more competent witnesses," etc., while in several of the states wills in the olographic form, as in this case, are sanctioned. It can hardly be supposed that the 28th section was intended thus to conflict with or vary the provisions of the 1st and 2d sections. These sections are all easily reconciled, if we suppose, as seems very reasonable, that the first two sections were intended to apply to domestic wills, that is, to all wills made by persons, who, by reason of their being domiciled in this state, derive their power of testamentary disposition from the laws of this state; while the 28th section was intended to provide for the case of wills made by persons domiciled in other states of the Union, and exercising their testamentary capacity pursuant

31

to the laws of their several states. A careful examination of the whole act, fully satisfies our minds, that it was designed to provide for three classes of wills: first, those made in virtue of power derived from the laws of this state, and which are therefore required to conform to the provisions of our laws; second, those made under, and to be similarly governed by, the laws of any other state or territory of the United States; and, third, those whose validity depends, in like manner, upon the laws of any other state or country.

The first twenty-seven sections of the act, will be found to relate wholly to the first class of cases, and in them full provision is made for the original probate, etc., in the proper courts of this state, of all such wills of this class, as are found to have been made in conformity with our laws. The 28th section provides for admitting to record, in this state, authenticated copies of wills of the second class, which have been duly proved in the proper jurisdiction. And the four following sections provide for the admission to record, in this state, of copies of wills of the third class, similarly proved and authenticated in the proper foreign country; and then follow sundry miscellaneous provisions.

And it is to be observed, that the act makes no provision whatever for the original probate, in this state, of any will not executed according to the requirements of the second section. Why should this be so, if it was intended that the wills of our own citizens, domiciled and dying in this state, should be equally valid, whether made with the solemnities required by our laws, or with those sanctioned by the laws of any other state?

On the same day that this wills act was passed, another statute was also enacted, for the settlement of the estates of deceased persons, 1 Curwen, 708. A reference to the first section of that act will show that upon the death of any "*inhabitant*" of this state, letters testamentary, or letters of administration on his estate, were to be granted by the court of common pleas of the county in which the deceased was an "inhabitant or resident" at the time of his death. Was it intended that the court, in the exercise of the jurisdiction

thus conferred, should give effect to an " authenticated copy " when the original was wholly void, because not executed according to law ?   We can not think so.   Without referring, in detail, to the various provisions of these two acts, passed on the same day, and, to some extent, *in pari materia*, it may suffice to say, that they all appear to recognize the rule of the common law, to which we have referred, that is, that a will relating to personalty, in order to be valid, must be executed according to the law of the testator's domicile at the time of his death ; and that the same law governs the succession both in cases of testacy and of intestacy.   It is true that our statutes do provide, and always have provided for administration upon property within the state, belonging to the estates of persons who at their death were domiciled elsewhere.   But such administration is of an ancillary character, and the assets, when collected, are, by international comity, distributed according to the law of the domicile of the deceased owner.   Administration of this character does not draw after it the jurisdiction to determine the question of testacy or intestacy, and settle the law of succession.   These provisions of our administration laws, and similar statutes in other states, as well as the section of the wills act now under consideration, were intended to facilitate " proceedings by persons who, upon principles of national comity, might claim the assistance of our courts, when necessary, to enable them to assert their rights to property, or to enforce their remedies as creditors, in this state, under wills which had been executed in another state or country, and properly established as such in the courts of that country."   27 Miss. Rep. 166.

. No previous decisions of this state have given an authoritative construction to this section of the act of 1840, and but little light is thrown upon it by decisions made under prior statutes on the same subject, but expressed in different language, and under a different state of facts.

The case of *Bailey* v. *Bailey*, 8 Ohio Rep. 239, arose under the 14th section of the wills act of 1831 (3 Chase 1787), which provided, " that authenticated copies of wills *proved* according to the laws of any state or territory of the United

States, relative to any property within this state, may be admitted to record by the court aforesaid, in the county where such property shall be; and such authenticated copies shall be good and valid in law, in like manner as wills made in this state are declared to be." The will, in that case, was a Virginia will, the testator being domiciled in that state both at the making of the will and at the time of his death. It had been regularly probated there, and an authenticated copy admitted to record in this state. The court held, in that case, that the copy of the will was improperly admitted to record in this state; that as the statute of 1831 did not, in terms, refer to wills "*executed*" according to the laws of another state, but only to wills so "*proved*," it should be held to relate only to wills executed agreeably to the laws of this state. For the purposes of the case now before us, it is unnecessary either to justify or condemn the reasoning or opinion of the court in that case. The holding would evidently have been otherwise, had the act of 1831, like the prior act of 1805, and the subsequent one of 1840, contained the words "*executed and.* proved." The correctness of the construction thus given to the statute of 1831, may be well questioned. The decision was made at the December term, 1837, and it is at least certain, that, at the next session of the legislature after its publication, that section of the statute was repealed, and replaced by another, in modified terms, which, while it rested, perhaps, on a misapprehension of the grounds of the decision, evidenced a dissatisfaction on the part of the legislature, with the law, as it had been expounded by the court. (1 Curwen, 550.) The next year, the act of 1840 was passed, and the word "executed," was inserted, the want of which had produced the decision in *Bailey* v. *Bailey*. An intention to change the law, *in that class of cases*, was thus clearly shown, but it does not follow that this change affects cases of an entirely different class, where the testator, by reason of his being domiciled in this state, both when the will was executed, and at the time of his death, derived his power to make a will of personalty, solely from the laws of the state.

But it was decided, in that case, and we think properly,

that the effect of admitting to record in this state an authenticated copy of a will, proved in another state, was merely to place the will on the same footing as though the original probate had been made in this state.

The case of *Meese* v. *Keefe,* 10 Ohio Rep. 362, was one of the same kind and arose also under the same act of 1831. The will was a Pennsylvania one—the testator, it is said, "lived in Philadelphia and died in 1833." The decision in *Bailey* v. *Bailey* was followed—the court remarking, however, that under the statute of 1840 (which had then been passed) as well as under the act of 1805, which was substantially the same with that of 1840, the decision would have been otherwise.

But we are confirmed in the view which we have taken of the act of 1840, by the construction which courts of other states have given to similar enactments.

A New Jersey statute, relative to the probate of wills, contained a section providing: "That when any will shall have been admitted to probate in any state or territory of the United States, or in any foreign state or kingdom," etc., the surrogate of any county in the state, might, upon application of any person interested, and upon notice given, order a duly certified copy of the will, etc., to be filed and recorded in his office. It was held, that this act, notwithstanding the generality and comprehensiveness of its terms, had reference to *foreign wills* only, and not to a case where the testator, at the execution of the will, and at the time of his death, was living in the State of New Jersey. *Wallace* v. *Wallace,* 2 Green's Ch. Rep. 616. It was among other things said by the ordinary: "It can hardly be supposed that the legislature would gravely enact a law, that the will of a man living and dying in this state—and which will was made within the state—might be proved in Pennsylvania, or New York, and then a certified copy be brought here for probate. The practice of first proving our wills in other states, has never yet obtained. No inconvenience or difficulty had been experienced from that source; and I can not believe that the legis

lature ever intended to make provision for a case so anomalous."

Under a similar statute of Mississippi, which provides that "authenticated copies of wills proved according to the laws of any of the United States or the territories thereof, or any country out of the limits of the United States, and touching or concerning estates within this state, may be offered for, and admitted to probate," etc.; it was held, by the court of errors and appeals of Mississippi, that "this law must be construed with reference to the whole law on the subject of wills. It has no application to wills made by citizens domiciled in this state; but only to wills made according to the laws of some other state or country.    *    *    If we give to this statute the broad construction contended for, that wills which must be executed according to the solemnities of our laws, may nevertheless be proved according to the laws of any other country, we, in effect, adopt the laws of that country, in the particular case, and allow them to decide the validity of the instrument.    This was never designed by the legislature." *Sturdivant* v. *Neil*, 27 Miss. Rep. 157.

A similar decision was made by the same court in *Morris* v. *Morris*, 27 Miss. 847, where the testator, being domiciled in Mississippi, was taken sick, in New York, on a visit to his friends, made a will, and died there. Probate was made of the will before the surrogate in New York, and a copy of this probate was admitted to record by the probate court of Hinds county, Mississippi. It was held, that the probate in New York was a nullity, and that original probate must be had in Mississippi, before the will could become operative there.

Upon the whole, then, after such careful and anxious examination of the case, as is demanded by the importance of the question presented, the obscurity of the statute, and the ability and research which counsel have exhibited in the discussion of the case—we are satisfied that the statute was intended to relate only to wills "*proved*" in a court to which the jurisdiction to make original probate in the case properly belongs, under the established rules of the common law; and

that, under the state of facts shown in this case, the courts of Louisiana had not such jurisdiction. It must, therefore, be held that a copy of the alleged will was improperly admitted to record in Hamilton county, and that the complainants· are entitled to a decree accordingly.

SUTLIFF, C. J., and PECK and BRINKERHOFF, JJ., concurred. GHOLSON, J., did not sit in this case.