CHARLES S. RACKEMANN, executor, *vs.* JOSEPHINE W. TAYLOR
& another.

Suffolk.   December 2, 3, 1909. — January 8, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Probate Court,* Jurisdiction, Appeal.   *Conflict of Laws.   Comity.   Jurisdiction.*

A testatrix died in 1908 in the State of New York where she had resided for sixty
years.   She had not been in this Commonwealth for thirteen years.   She left
real estate of great value in New York and a deposit of $600 in a bank there.
She had a deposit of $15,000 in a bank in Boston and certificates of capital
stock and bonds of corporations, some organized under the laws of this Com-
monwealth and some under the laws of other States, in a safety deposit box
under the care of a nephew in Boston, who had managed them for her for
many years.   She also had a power of appointment over a trust fund created
by a will, the trustees of which had been appointed by the Probate Court of this
Commonwealth.   Of this trust fund, $600,000 was in this Commonwealth, and an
equity in real estate valued at $60,000 was in New York.   The testatrix's only
heirs at law were three daughters, all of whom resided in New York.   The rest of
the beneficiaries under the trust, twenty-one in number, resided near Boston.   The
will of the testatrix had been drawn in Boston, but was executed by the testatrix
in Newport, Rhode Island, and always had remained in the custody of a Boston
attorney at law who was named as one of the executors.   The other executors
named were the nephew, who had been the testatrix's agent and who declined to
serve, and one of her daughters.   Before the will was proved in New York, the
Boston attorney at law filed in the county of Suffolk a petition that it be proved
here, in which petition the daughter who was named as one of the executors
refused to join, and to which proceedings she objected.   Special administrators
were appointed to take charge of the property in this Commonwealth.   A judge
of the Probate Court allowed the will, and daughters of the testatrix appealed.
A single justice of this court reported the case for determination by the full
court.   *Held,* that, while the Probate Court of this Commonwealth, since the
testatrix left property here, had the power, and in that sense the jurisdiction,
to allow proof of the will here before it was proved in the State in which the
testatrix died domiciled, there was not shown any reason for departing from the
rule, recognized by the various States for practical reasons and through comity,
that the primary proof of a will should be where the testator had his domicil
when he died; and therefore that the petition should be dismissed without
prejudice.

The jurisdiction of the Probate Court of this Commonwealth to allow proof of the
will of one who has died domiciled in another State exists only when the will
first has been proved in the State of the domicil of the testator, unless special
reasons are set forth for an application for proof of the will in this Common-
wealth without waiting longer for proof in the courts of the domiciliary State.

It is within the very large power given to the Supreme Judicial Court on appeal
from the Probate Court by R. L. c. 162, § 23, to order a petition for the proof

of a will, which has been allowed by the Probate Court, to be dismissed without prejudice, where it appears that the testator had died domiciled in another State, that the will had not been proved there, and that there was no special reason for its being proved first in this Commonwealth.

KNOWLTON, C. J.   The fundamental question in this case is whether the petitioner for the probate of the will of Caroline E. Johnson, late of the city of New York, State of New York, deceased, shall be given an opportunity to establish the will, if he can, in the courts of Massachusetts, before it has been allowed in the domicil of the testatrix.   The following facts, among others, are agreed:

· The testatrix died at her home in New York, which was the place of her domicil, on April 24, 1908.   She had not been domiciled in Massachusetts since her marriage in 1847.   For sixty years she had resided in the State of New York.   For the last eighteen or twenty years of her life she spent her summers in Newport, Rhode Island.   For more than thirteen years before her death she had not been within the State of Massachusetts.   At the time of her death she owned two parcels of real estate in the city of New York, whose value was between $450,000 and $600,000.   She had a deposit of $600 in a bank there.   She owned stocks in corporations, and bonds, most of which bonds were registered, whose total value was about $250,000, and these were in the custody of her nephew and agent Ellerton P. Whitney, in a safe deposit vault in Boston.   He had held and managed them as her agent for twenty years, and they remained in his custody until the appointment of special administrators of the estate, when they were transferred to their possession.   Some of these corporations were organized under the laws of Massachusetts, and some of them under the laws of other States.   At the time of her death, she had on deposit more than $15,000 in the New England Trust Company of Boston.   She also had a power of appointment by will, over a trust fund held by trustees appointed by the Probate Court for the County of Suffolk, under the will of Joseph Whitney, late of Boston.   This fund then amounted to about $600,000, and consisted of stocks and bonds, real estate in Massachusetts, and an equity in real estate in New York, of the value of about $60,000.   Her only heirs at law are her three

daughters, who reside in New York. The other possible bene-
ficiaries under the alleged will are twenty-one in number, and
they all reside near Boston. The executors named in the will
are her nephew, Ellerton P. Whitney of Milton, her daughter,
Mrs. Emmet of New York, and the petitioner, a lawyer in Bos-
ton. Mrs. Emmet declined to join in the petition, and Ellerton
P. Whitney declined to serve as executor. The three daughters
of Mrs. Johnson appeared specially in the Probate Court before
any hearings were had to prove the will, and objected to the
presentation of the will for original probate in this jurisdiction,
for the reason that the domicil of the testatrix was in New
York. They asked that the proceedings be dismissed or con-
tinued until the case should be tried in the Surrogate's Court
for the County of New York. This petition was denied, and
the special appearance for the daughters was afterwards with-
drawn, and a general appearance was entered for Josephine W.
Taylor, one of the daughters, who filed a motion in writing, be-
fore the hearings were held, that the proceedings in the Probate
Court be continued to await the result of proceedings then pend-
ing in the Surrogate's Court for the County of New York. The
proceedings in New York were begun at the instance of the
three daughters, by a person claiming to be a creditor of Caro-
line E. Johnson to the amount of $200, and in these proceed-
ings he petitioned for the probate of the will. The daughters
opposed the probate, and Mr. Rackemann, the present petitioner,
filed a protest against any proceedings in the State of New York.
This motion to continue was denied in the Probate Court.

After a hearing and the examination of witnesses in the Pro-
bate Court, the will was admitted to probate, and Josephine W.
Taylor and Fanny L. Johnson appealed, giving as one of the
reasons of appeal that Caroline E. Johnson had her domicil in
the city and State of New York, and that probate proceedings
concerning any will alleged to be made by her should first have
been had in that jurisdiction. The alleged will was executed in
Newport, Rhode Island, but ever since its execution, until it was
filed in the Probate Court, it has remained in the custody of Mr.
Rackemann. When Mr. Rackemann presented the petition in
the Probate Court he knew that one or more of Mrs. Johnson's
daughters objected to the probate of the alleged will, and in-

tended to contest the allowance of it. The alleged will was drawn in Boston. Upon the petition of the three daughters, before the allowance of the will in the Probate Court, special administrators were appointed to take charge of the property in Massachusetts.

After the entry of the appeal in the Supreme Judicial Court, two of the daughters, upon the suggestion of the presiding justice, filed a motion that the petition for the probate of the will be dismissed without prejudice to the right to petition for probate later, if occasion should arise therefor, alleging as reasons for their motion the facts stated above. They also filed a motion for a stay of proceedings until the validity of the will should be determined in the domicil of the alleged testatrix.

The case is before us upon a report of the justice upon questions raised by the foregoing facts.

It is a familiar rule of law that the right of succession to the estate of a deceased person, whether he leaves a will or dies intestate, depends upon the law of his domicil. The settlement of his estate and the disposition of his property are to be made in accordance with the law of that place. If he owns real estate in another State or country, that is, of course, subject to the local laws of the place where it is situated, and no owner can take or hold it otherwise than in conformity with those laws. But these laws are not intended to interfere with the reasonable right of control and disposition of its owner, so far as to have a situs for the purposes of disposition by will, or by succession under the statutes of distribution in the place of his domicil. The primary proof of a will and the primary administration of an estate, if the owner dies intestate, should be where he had his domicil. If he has property in another State or country, it may be necessary to prove the will or to take out administration there, either for the purpose of obtaining and collecting the property, or for the security of local creditors, or the protection of rights of the State to receive taxes, or of residents of the State who ought to get what they are entitled to receive from the estate without being obliged to follow the property into another jurisdiction. But such probate of a will or such administration of an intestate estate is always merely ancillary. It is not for the purpose of establishing rights of succession, whether under a will

or otherwise. Those are to be established in the courts of the State or country where the deceased person had his domicil. The strictly ancillary character of such proceedings has been recognized by many decisions of the courts of our own State, as well as of courts elsewhere. *Selectmen of Boston* v. *Boylston*, 2 Mass. 384. *Richards* v. *Dutch*, 8 Mass. 506. *Stevens* v. *Gaylord*, 11 Mass. 256, 263. *Jennison* v. *Hapgood*, 10 Pick. 77, 100. *Dawes* v. *Head*, 3 Pick. 128, 141, 145. *Crippen* v. *Dexter*, 13 Gray, 330. *Shannon* v. *White*, 109 Mass. 146, 148. *Shannon* v. *Shannon*, 111 Mass. 331, 334. *Talbot* v. *Chamberlain*, 149 Mass. 57. *Bowdoin* v. *Holland*, 10 Cush. 17. *Frothingham* v. *Shaw*, 175 Mass. 59, 63. *Wallace* v. *Wallace*, 2 Green Ch. 616, 622. *Hyman* v. *Gaskins*, 27 N. C. 267, 274. *Mills* v. *Fogal*, 4 Edw. Ch. 559. *Manuel* v. *Manuel*, 13 Ohio St. 458. *Stark* v. *Parker*, 56 N. H. 481, 485, 487. *Morris* v. *Morris*, 27 Miss. 847. It was said in *Prescott* v. *Durfee*, 131 Mass. 477, 478, that " the object of appointing an administrator [in another jurisdiction than that of the domicil of the testator] is not to determine the rights of parties interested in that estate, but to have a legal representative of the estate of the deceased within the Commonwealth, against or through whom those rights may be asserted." In *Talbot* v. *Chamberlain, ubi supra*, the court said : " Unless it [the domicil] was in Iowa, the courts of that State did not have, and the courts of Massachusetts did have, jurisdiction of the original probate of his will." The subject is discussed very fully in *Parsons* v. *Lyman*, 20 N. Y. 103. In the *Matter of Cameron*, 47 App. Div. (N. Y.) 120, 126, affirmed on appeal in 166 N. Y. 610, it was held that the alleged will of a person domiciled in New York, which had been proved in Illinois on the ground that he left property there, could not be allowed in New York on the proof furnished to the court, the will itself being retained in Illinois. An administrator was appointed to settle the estate as intestate. The judges were unwilling to have the laws of New York (to use their language) " circumvented by the practical administration of the estate under a will which, if valid, ought to be established according to our laws, and if not valid, should not be made effectual by indirection." In *Davis* v. *Upson*, 230 Ill. 327, the same alleged will was before the court, and the judges said : " If the decision of the court of the domicil of a

deceased person does not control in the matter whether the deceased died testate or intestate there must necessarily result a multitude of decisions upon that question, and if a devisee may carry a will from State to State and present it for probate in each State where the decedent had a debt due him at the time of his death, until he can find a State under the laws of which it can be admitted to probate, great confusion in the settlement of estates would follow." In *Mills* v. *Fogal*, 4 Edw. Ch. 559, in dismissing a bill asking for a construction of a will of a person whose domicil was in Connecticut, the court said: " It is very obvious that it was the duty of the executors, in the first instance, (unless they had chosen to renounce) to have gone with this will for probate before the proper officer or court in Connecticut and there asked for letters testamentary upon it as a will of personal estate. If they succeeded in getting it admitted to probate . . . they should then and not till then have come to the surrogate of the city and county of New York for letters founded on the probate in Connecticut. . . . That question (the question of construction) the widow has a right to have determined in Connecticut, where her husband lived and died ; and if the executor will not produce the will there for probate, so as to give her an opportunity for meeting it she can apply for letters of administration here, so as to be authorized to look after and sue for and possess herself of the personal estate within this jurisdiction."

There is nothing inconsistent with this doctrine in the decisions in Massachusetts. Indeed, they are in harmony with it. Our statutes are founded on the same doctrine. R. L. c. 143. By § 1 of this chapter, the estate of a deceased person who was an inhabitant of another State or country, if " found here shall, after payment of his debts, be disposed of according to his last will, if he left any duly executed according to law ; otherwise his real property shall descend according to the laws of this Commonwealth, and his personal property shall be distributed and disposed of according to the laws of the State or country of which he was an inhabitant." By the next section, payment of his debts from his estate is secured to creditors in this Commonwealth, and the residue of the estate may be distributed and disposed of as provided in the preceding section, by the Probate

Court; or, it may be transmitted to the executor or administrator in the State or country of which the deceased person was an inhabitant, to be there disposed of according to the laws thereof. Every part of the chapter recognizes the law of the domicil of the deceased person as controlling in all matters pertaining to succession to his property. If the Probate Court should assume to distribute and dispose of the personal estate according to his last will, and if there was a question of construction of the will upon which the courts of the different States differed, the Probate Court would be bound by the construction of the courts in the State of his domicil.

The same doctrine lies at the foundation of the R. L. c. 136, §§ 10–12, in regard to the admission to probate of a will which has been proved and allowed in another State or in a foreign country, upon the production of an authenticated copy of the will and of the probate thereof. It has been held that similar statutes in other States have reference only to the record of the probate in the place of the testator's domicil. *Wallace* v. *Wallace*, 2 Green Ch. 616. *Manuel* v. *Manuel*, 13 Ohio St. 458. When we consider § 10, in connection with § 12, by which it appears that the settlement of estates under these sections is to be " in the manner provided in chapter one hundred and forty-three, relative to such estates," it seems that these provisions are intended to apply only to records and laws affecting wills in the domicil of the testator, and that this kind of administration under a will is strictly ancillary.

If a will should be presented and proved in a State other than that in which a testator had his domicil, and if, afterwards, upon proceedings for the proof of the same will in the State of his domicil, it should be disallowed and his estate should be held to be intestate, we should have the strange anomaly of the same instrument being upheld as a will in one State and set aside as not a will in another State, and there would be two inconsistent methods of disposing of his property. The will proved in the ancillary proceedings could have no effect except upon the property within the State, and as to that, it should have no effect, after the payment of debts and proper charges against the estate, that should prevent the disposition of the personal property according to the law of the domicil of the deceased person.

Ordinarily, unless there is some special reason to the contrary, the residue should be transmitted to the administrator in the place of the domicil. What would be done in a case of such conflict we need not determine. The law ought to be so administered as to prevent such conflicts. While there would no doubt be power in the court, in the case supposed, to dispose of the property within this jurisdiction according to the terms of an instrument which it had found to be a will, although the courts of the State which had primary jurisdiction of it had found it not to be a will, it would seem that the true theory of administration would call for a disregard of the ancillary proceedings, in reference to the succession to the property, and for a transmission of the residue to the State where primary administration was going on.

In *Putnam* v. *Pitney*, 45 Minn. 242, the will was proved in New Jersey, where the testator had his domicil, and a creditor from another State applied for ancillary administration in Minnesota, with a view to the collection of his debt. There was a statute in the State, permitting ancillary administration in such cases. In reference to granting administration, the court said: " But there is another ground upon which the petition was properly denied. Upon the facts, ancillary administration in this State was neither necessary nor justifiable, and to have granted it would have been in violation of the plain principles of the law of comity. . . . And we may assume for the purposes of this case that there may be cases where it would be proper to institute ancillary administration in this State on the petition of a foreign creditor. . . . It is a settled principle of universal jurisprudence in all civilized countries, that the personal estate of the deceased is to be regarded for the purposes of succession and distribution, wherever situated, as having no other locality than that of his domicil." In *Hyman* v. *Gaskins*, 27 N. C. 267, where a will had been proved in that State when the domicil of the testator was in Florida, the court said: " It is to be regretted, that the court has unadvisedly pursued this course. A proper respect for the laws and institutions of Florida should have led to the adoption of the accustomed mode. It is an unnecessary departure from that comity, which ought ever to exist between the courts of different nations."

In the present case, no reason appears for presenting the will for probate here before it was passed upon in the State of New York, unless it was to secure an adjudication in Massachusetts which would settle the succession to the property of the testatrix in this State. Perhaps it was expected to go further, and, if a favorable decision was obtained in our courts, to claim an estoppel in New York against the heirs at law who were parties litigant in Massachusetts. Such a purpose, if it existed, was contrary to the true theory of the law. The heirs at law of Mrs. Johnson, and all persons interested under the alleged will, are entitled to have the instrument primarily considered, and its validity or invalidity finally determined, by the courts of New York. It is the duty of the executor, unless he declines his appointment, to present it for probate there. It would be contrary to principles of comity, as well as an interference with the rights of the heirs at law, for the Probate Court to retain jurisdiction of this petition under the facts that appear in the present case.

We do not question that, in a sense, the court has jurisdiction, that is, it has such control of the property in this Commonwealth that it is in its power to entertain a petition for the probate of the will before it is considered by the courts of New York. It will be the duty of the court, upon application, so to deal with this estate as to protect the rights of creditors in this Commonwealth, if there are any, and to secure to the treasurer of the Commonwealth such inheritance taxes as should be paid, and otherwise to protect local interests; but there is no occasion to proceed with this petition in the present aspect of the case. Special administrators have been appointed, who will take care of the property. If the will is proved in New York, it doubtless can be proved here with little delay and with slight expense. The will itself, which is now on file in the Probate Court, should be in New York, subject to the control of the court there during the proceedings for the probate of it. This is a case in which the court, upon the facts before us, should decline to exercise jurisdiction. We do not doubt that there may be cases in which, if it seemed necessary for the protection of parties, the court properly might take jurisdiction of such a petition, although the will had not been presented for probate in the State of the domicil of the testator. In such cases the petition should set forth

the facts that call for the exercise of the jurisdiction. But this is one of that class of cases in which, if the court has power — and in that sense has jurisdiction — it ought not to exercise its power, having regard to practical considerations affecting the rights and interests of the parties, and also to the comity which should be maintained between the courts of different States. The case is analogous to a class of cases of which *Smith* v. *Mutual Life Ins. Co.* 14 Allen, 336, 343, is one, in which Mr. Justice Wells said: "But aside from the question of power depending on the right of jurisdiction, we regard it as within the province of this court, sitting as a court of equity, in its discretion, to decline to exercise jurisdiction in such cases ; referring parties to the tribunals of the State upon whose laws their relations and rights peculiarly depend, and where alone they can be effectually and properly administered." See also *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, 353; *Kimball* v. *St. Louis & San Francisco Railway,* 157 Mass. 7 ; *National Telephone Manuf. Co.* v. *Du Bois,* 165 Mass. 117.

We think that, upon the facts shown, the Probate Court should have declined to take jurisdiction of the case, and should have dismissed the petition, without prejudice to the right of persons interested to petition later for the probate of the will, if occasion should arise.

The jurisdiction to allow the probate of a foreign will for ancillary administration exists only when the will has been proved in the State of the domicil of the testator, unless special reasons are set forth for an application for the ancillary probate of it, without waiting longer for administration in the courts of that State.

Upon an appeal from the Probate Court to the Supreme Judicial Court, the statute gives a very large power to the appellate tribunal to " enter such decree thereon as the Probate Court ought to have entered, . . . or make any other order therein, as law and justice may require." R. L. c. 162, § 23.

We are of opinion that the petition should be dismissed without prejudice.

*So ordered.*

*C. F. Choate, Jr.*, for the petitioner.

*C. R. Clapp,* (*John Chipman Gray* with him,) for the contestants.