## Emma F. Dickinson et al., Appellants, v. Franklin W. Ridgely, Executor et al., Appellees.

1. DESCENT AND DISTRIBUTION, § 9*—*what law governs.* The right of succession to the personal estate of a deceased person, whether he leaves a will or dies intestate, depends on the law of his domicile.

2. WILLS, § 224*—*law governing construction as to right of succession to personal estate.* The construction of a will as to the right of succession to personal property must be determined according to the law of the State in which the testator was domiciled at the time of his death.

3. WILLS, § 495*—*when lapsed legacies do not fall in residuum.* Though as a general rule lapsed legacies will sink into the residuum where there is a general residuary clause sufficient to embrace it in its terms, there is an exception to the rule in cases where the testator gives legacies to the same persons who are provided for under the residuary clause.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Dickinson v. Ridgely, 188 Ill. App. 252.

4. WILLS, § 494*—*when lapsed legacies become intestate property.* Where a will gave legacies to the same persons who were made beneficiaries under the residuary clause and the residuary clause provided for a distribution of the residue of the estate and lapsed legacies and one of the legatees died before the testatrix, *held* that the legacy and also the residuary legacy of such deceased legatee lapsed and became intestate property.

5. JUDGMENT. § 576*—*conclusiveness of foreign judgments.* Foreign judgments are conclusive in this State only when the proceedings in which they were rendered show that the court had jurisdiction of both the subject-matter and the parties.

6. JUDGMENT, § 577*—*right of courts of this State to inquire into jurisdiction of court entering foreign judgment.* Courts of this State may inquire into the proceedings, judgments and decrees of a court of another State to determine if that court had jurisdiction of the subject-matter and of the parties.

7. EXECUTORS AND ADMINISTRATORS, § 564*—*law governing distribution on ancillary administration.* The distribution of personal assets in the hands of an ancillary administrator or executor must be made according to the laws of the decedent's domicile.

8. JUDGMENT, § 577*—*when foreign judgment void for want of jurisdiction to make it.* Where the Probate Court in another State on an ancillary administration of an estate of a decedent, who was a resident of this State made an order of distribution contrary to the laws of succession in this State, *held* that it acted without authority and that the order was not conclusive on the courts in this State.

9. JUDGMENT, § 577*—*when foreign judgment void and not conclusive for failure of record to show jurisdiction of parties.* An order of distribution by a Probate Court of another State made on an ancillary administration, *held* void and not conclusive on the courts of this State for the reason that the record did not show service of notice upon the persons interested in the estate.

10. EXECUTORS AND ADMINISTRATORS, § 563*—*nature of ancillary administration.* An ancillary administration is but auxiliary to the principal administration and is subordinate thereto.

11. EXECUTORS AND ADMINISTRATORS, § 583*—*when erroneous distribution on ancillary administration may be corrected on final distribution of principal estate.* Where on an ancillary administraton the Probate Court of another state makes an order of distribution of the personal estate whereby the distributees receive a larger share than they are entitled to, such error in the distribution may be corrected on the final distribution of the principal estate by requiring such distributees to account for the excess over their proper

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

shares, where the executor of the principal estate has made no distribution and has sufficient funds in his hands to rectify the error.

Appeal from the Circuit Court of Menard county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed July 2, 1914. *Certiorari* allowed by Supreme Court.

JULIAN H. HALL and SMOOT & LANING, for appellants.

WATKINS & GOLDEN and J. C. HAMMOND, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is a bill in chancery to construe the third and fifth clauses of the will of Elizabeth S. Lee, deceased. The will was executed April 14, 1909. The first clause directs that all the debts of the testatrix be paid, the second provides for a number of specific legacies, the fourth devises the home of the testatrix and the sixth appoints Franklin Ridgely executor of the will. The third and fifth clauses are as follows:

"Third. I give and bequeath all my money on deposit in the savings banks in the State of Massachusetts, together with the savings bank books representing such deposits, one-half to my brother, Calvin S. Loomis, of Whately, Massachusetts, the other half to be equally divided between the children of my deceased sister, Sarah A. Belden, late of Hatfield, Massachusetts, the descendants of a deceased child to take the parent's share, and I appoint my nephew, Daniel W. Wells, as ancillary executor of this will in the State of Massachusetts."

"Fifth. All the rest and residue of my estate, both real and personal, and any lapsed legacies, I give, devise and bequeath as follows: One equal part thereof to my brother, Calvin S. Loomis of Whately, Massa-

chusetts, or in case of his death to his descendants, according to the laws of descent of the State of Illinois; and the other one equal part thereof to be divided equally among the children of my deceased sister, said Sarah A. Belden, the descendants of a deceased child to take the parental share."

Elizabeth S. Lee, the testatrix, was a resident of Athens, Menard county, Illinois, and died October 28, 1911, at said place. She left an estate of about $60,-000, which consisted chiefly of personal property; $20,000 of this amount was money on deposit in savings banks in the State of Massachusetts and the balance of the property was situated in the State of Illinois. Franklin W. Ridgely qualified as the executor of her will in Illinois and Daniel W. Wells as ancillary executor in Massachusetts, and both are now acting as such executors.

Testatrix left no descendants, brothers or sisters, father or mother, but left surviving her as her only heirs at law numerous nephews and nieces, who were children of deceased brothers and sisters. At the time the will was made she had one brother living, Calvin S. Loomis, who died on April 10, 1911, over six months prior to the death of the testatrix.

On August 24, 1912, the said Daniel W. Wells, ancillary executor, filed his petition in the Probate Court of Hampshire county, Massachusetts, stating that there was a balance in his hands to be distributed and that three-fourths of said balance was to be distributed according to the will; that Calvin S. Loomis having died in the lifetime of the testatrix, leaving no descendants, one-fourth of the net estate was intestate estate; that by the third clause of said will one-half of the property in Massachusetts was bequeathed to be divided equally between the children of Sarah A. Belden; that by the fifth clause of the will another share, to wit, one-one fourth of the estate in his hands, was in like manner to be divided equally among the children of Sarah

A. Belden, and that the last and remaining one-fourth was intestate estate, and other persons were heirs beside the children of said Sarah A. Belden; that petitioner had upwards of $18,000 in his hands and that $2,000 was sufficient reserve for debts and expenses; that $12,000 could properly be distributed to the children and descendants of Sarah A. Belden, and praying for distribution of said amount. Franklin Ridgely, the Illinois executor, filed his objection to the granting of said petition on the ground, among others, that the legacies of Calvin S. Loomis having lapsed, the succession to the property embraced therein should be determined by the laws of the State of Illinois; that a large part of the lapsed legacies became intestate property and that the persons entitled thereto were not residents of Massachusetts, and that the efficient and economical administration of the estate required that after the payment of the debts of the testatrix the balance should be turned over to him to be distributed in accordance with the laws of the State of Illinois. His objections were overruled and a distribution ordered in accordance with the prayer of the petition. None of the complainants, appellants here, appeared at said hearing and no appeal was taken from the order of said court.

The bill avers that the distribution of the Massachusetts estate was wrongfully made; that $4,000 of the money distributed under the order of the Probate Court of Hampshire county to the descendants of Sarah A. Belden as testate property bequeathed to them by clause 5 is not testate property, but, on the contrary, is intestate property and should be distributed to the heirs at law of Elizabeth S. Lee; that Franklin Ridgely, executor, has $40,000 in his possession; that complainants have requested him to pay to them out of the money in his hands for distribution such sums, respectively, as they have been deprived of by the wrongful distribution made by said Wells, but

said Ridgely has refused so to do; that there is a dispute as to how the said funds bequeathed to Calvin S. Loomis by clause 3 in said will should be distributed; prays for the construction of said will in so far as the same is sought to be construed, and that the respective rights of the complainants in and to the lapsed legacies may be determined; that said Ridgely be directed to pay complainants out of the fund belonging to the estate of Elizabeth S. Lee such sums as may be found necessary in order that complainants may receive their respective shares of said lapsed legacies.

The answer of the Belden children avers that the distribution of the Massachusetts property was correct and that the Probate Court of Massachusetts having determined the proper distribution of the property in that State that the same cannot be reversed by the courts of this State. The answer of Franklin W. Ridgely, executor, admits there is a dispute as to how said fund bequeathed to said Calvin S. Loomis should be distributed and prays for direction and instruction of the court. The answer of Daniel W. Wells, ancillary executor, avers that the Probate Court of Hampshire county, Massachusetts, had exclusive jurisdiction and control of his actions in the premises and of the fund in his possession, and the Circuit Court of Menard county has no jurisdiction in regard to the matter. Complainants filed replications to the answers.

On the hearing, the decree of the Circuit Court found that both the specific and residuary legacies to Calvin S. Loomis lapsed and became intestate estate, but that the Probate Court of Hampshire county, Massachusetts, had power to make a distribution of the assets in that State, and that all parties in interest had due notice of said proceeding in said court, and that said order was an appealable order under the laws of Massachusetts; that the Illinois executor appeared and took part therein, and did not appeal from said order; that by virtue of the portion of the Federal constitu-

tion, which declares that full faith and credit shall be given in each State to the judicial proceedings of every other State, the order of the Massachusetts court is binding upon the Circuit Court, and that its construction of the law, so far as the same relates to the distribution of the Massachusetts funds, cannot be questioned by the courts of this State. It then decrees a distribution in accordance with said findings.

Appellants assigned error to that part of the decree holding that the Circuit Court of Menard county was bound by the order of distribution of the Probate Court of Hampshire county, Massachusetts, and in refusing to decree that their respective share in the Massachusetts funds be made up to them out of the funds in the hands of the Illinois executor.

Appellees have filed cross-errors to that part of the decree finding that both the specific and residuary legacies lapsed and became intestate estate of Elizabeth S. Lee, and to the distribution of the lapsed legacy under the fifth clause of the will as intestate estate.

The situs of personal property is the domicile of the owner, and on the death of the owner the law governing its distribution is that of his domicile at the time of his death. *Cooper v. Beers,* 143 Ill. 25; *Davis v. Upson,* 230 Ill. 327. The right of succession to the personal estate of a deceased person, whether he leaves a will or dies intestate, depends upon the law of his domicile. *Rackemann v. Taylor,* 204 Mass. 394; *Osburn v. McCartney,* 121 Ill. 408. There can be no controversy over the proposition that the construction of this will as to the rights of succession to the personal property bequeathed under the third and fifth clauses thereof must be determined according to the law of this State, the domicile of the testatrix at the time of her death.

By the third clause the testatrix bequeathed one-half of the money on deposit in the banks of Massachusetts to her brother, Calvin S. Loomis, and the

other half to the children of a deceased sister, Sarah A. Belden. By the death of Loomis before the death of the testatrix his legacy under this clause lapsed. The fifth or residuary clause bequeaths one-half of all the rest and residue of the estate, and any lapsed legacies, to said Loomis or his descendants, and the other half thereof to the said children of Sarah A. Belden, or their descendants. This residuary legacy to Loomis also lapsed. It will be noticed that the legatees under the residuary clause are the same legatees named in the third clause. In determining the rights to the succession of the property included in these lapsed legacies it is necessary to consider the third and fifth clauses in connection with each other.

The general rule is well settled in this State that if a legacy lapses, and there is a general residuary clause sufficient to embrace it in its terms, it will sink into the residuum, and all lapsed legacies of personal property go into a general residuary fund. *Crawford v. Mound Grove Cemetery Ass'n,* 218 Ill. 399; *Dorsey v. Dodson,* 203 Ill. 32; *Mills v. Newberry,* 112 Ill. 123. To this general rule, however, there is an exception in cases where the testator gives legacies to the same persons who are provided for under the residuary clause, in which event the lapsed legacy does not fall into the residuum because it would in effect be construing that the intention of the testator was to bequeath to one who died a portion of the residue happening in consequence of his own death.

In the case of *Dorsey v. Dodson, supra,* the will there under consideration gave a specific legacy of $5,000 to Henrietta Dorsey. By the nineteenth section of that will the executor was directed to sell the residue of the real estate and turn over the proceeds to John J. Green, Henrietta Dorsey and Fanny Knapp, to be equally divided between them, share and share alike. The twentieth clause gave all the residue of the personal estate to said John J. Green, Henrietta

Dorsey and Fanny Knapp. Henrietta Dorsey died in the lifetime of the testator. The facts in that case in all substantial respects are similar to those in the case at bar. The Supreme Court in deciding the effect of the lapsing of the legacies to Henrietta Dorsey, said: "The other question in the case relates to the legacy of $5,000 to Henrietta Dorsey. The general rule is, that if a legacy lapses, and there is a general residuary clause sufficient to embrace it in its terms, it will sink into the residuum. This is based entirely upon the presumed intention of the testator that the residuary clause shall include everything not effectually devised or disposed of. Upon the failure of a particular intent to give a legacy to some person the courts give effect to the general intent manifested by the residuary clause, presuming that the testator prefers the residuary legatee to every one except the particular legatee. But where a testator gives legacies to several persons and then provides for a division of the residue between the same persons the rule and the reason for it fail. The rule in such case is stated in Schouler on Wills (3d Ed. sec. 519) as follows: 'Where legacies are given to several legatees and the residue is bequeathed to the same legatees, it follows that the residue will not include a lapsed legacy to one of them.' To hold, in such a case, that the testator intended the lapsed legacy to fall into the residuum, was said in *Craighead v. Given,* 10 S. & R. 351, to hold that the testator intended to bequeath to one who died a portion of the residue happening in consequence of his own death— a construction which could never be supported. Where a testator gives specific legacies to several legatees and gives the residue to them as tenants in common, if each one receives his share of the residue over and above the specific legacies he receives exactly what the testator intended to give him. Having given to each specific sums and a specific share of the excess over the total of such sums, the proportion of those

who live is not to be enlarged by a lapsed legacy. It is not to be inferred that the testator intended that a lapsed legacy to one should fall into the residue, so that the survivors should receive a different and increased proportion of the testator's estate. (*Green v. Pertwee*, 5 Hare, 248; *Silcox v. Nelson*, 24 Ga. 84; *Lombard v. Boyden*, 5 Allen, 249; *Lloyd v. Lloyd*, 4 Beav. 231.) Not only did the specific legacy to Henrietta Dorsey lapse, but her share of the residuary estate also lapsed, and to carry the lapsed legacy to her forward into the residuum would be to add one-third of it to another lapsed legacy to her and augment the shares of Fanny Knapp and the estate of John J. Green with the remaining two-thirds, contrary to the rule of law in such cases. It will be seen that the same rule would apply as to the share of Henrietta Dorsey in the proceeds of the real estate under the nineteenth clause, and for the same reason it could not go into the residue. The testator gave the proceeds to her and her brother and sister in equal shares, and could not have intended, in case of her death, that her share should pass to her and the same brother and sister under the twentieth clause. The provisions of the will for Henrietta Dorsey all lapsed, and under its terms became intestate estate, to be distributed, as such, under the Statute of Descent.'' The rule announced in the above case was approved and followed in *Crawford v. Mound Grove Cemetery Ass'n, supra*.

The controlling principle announced in these cases is that the law will never hold that a testator intended to bequeath to one who died a portion of the residue happening in consequence of his own death. But it is submitted by counsel for appellee that the words in the residuary clause, ''and any lapsed legacies,'' distinguished this case from those above cited. To this proposition we cannot agree. These words give no other or different meaning to this clause than that which the law itself would give if they had not been

used. They add no force to the intention of the testatrix, nor do they make it more certain, nor can they have any effect in changing the reason for the rule as announced in said cases. It is apparent, therefore, that the lapsed legacy to Loomis under the third clause became intestate property to be distributed according to the laws of descent of this State and did not descend into the residuary clause. The residuary legacy to Loomis under the fifth clause also lapsed and became intestate property to be distributed according to the laws of descent of this State. It follows that the construction of the effect of these lapsed legacies by the chancellor in the decree was correct.

It remains to be considered whether it was error in the decree to hold that the order of distribution entered in the ancillary estate in Massachusetts by the Probate Court of Hampshire county is conclusive on the courts of this State, by virtue of section 1, art. IV, of the Constitution of the United States, which provides that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. Foreign judgments are only conclusive in this State when the proceedings in the cases in which the judgments are rendered show that the courts which rendered them had jurisdiction of both the subject-matter and the parties. *Zepp v. Hager,* 70 Ill. 223; *Tucker v. People,* 122 Ill. 583. Since the case of *Thompson v. Whitman,* 18 Wall. 457, the Supreme Court of the United States has repeatedly held that the record of a judgment rendered in another State might be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist, the record will be annulled, notwithstanding it may recite that they did exist; that want of jurisdiction may be shown either as to the subject-matter or the person. *Simmons v. Saul,* 138 U. S. 439; *Reynolds v. Stockton,* 140 U. S. 254; *National Exchange Bank of Tiffin v. Wiley,* 195 U. S. 257;

and the same rule obtains in Massachusetts, *Gilman v. Gilman,* 126 Mass. 26. Courts of this State may inquire into the proceedings, judgments and decrees of a court of another State to determine if that court had jurisdiction in the subject-matter and of the parties, and the judgments and decrees rendered by a court without such jurisdiction are void, and have no binding effect upon the party aggrieved. *Field v. Field,* 215 Ill. 496; *Forsyth v. Barnes,* 228 Ill. 326; *Forrest v. Fey,* 218 Ill. 165.

As a general proposition, the law is that the distribution of personal assets in the hands of an ancillary administrator or executor must be made according to the laws of the decedent's domicile. 13 A. & E. Encyc. of Law, page 940. And this is the rule not only in this State, but in the State of Massachusetts. *Rackemann v. Taylor,* 204 Mass, 394; *Osburn v. McCartney,* 121 Ill. 408. Section 1 of chapter 143 of the Revised Laws of Massachusetts provides that in the ancillary administration of the estates of persons who are residents of other States, the estate found there, after the payment of the debts, shall be disposed of according to the last will, if he left any; otherwise, his real property shall descend according to the laws of Massachusetts, and his personal property shall be distributed and disposed of according to the laws of the State of which he was a resident. Section 2 of said Act provides that distribution may be made by the ancillary executor of that State, or in the discretion of the court the estate may be transmitted to the executor or administrator in the State of which the deceased was an inhabitant, to be there disposed of according to the laws thereof. In the construction of this statute by the Supreme Court of Massachusetts, that court held in the case of *Rackemann v. Taylor, supra:* "Every part of the chapter recognized the law of the domicile of the deceased person as controlling in all matters pertaining to the succession to his property.

If the Probate Court should assume. to distribute and dispose of the personal estate according to his last will, and if there was a question of construction of the will upon which the courts of the different States differed, the Probate Court would be bound by the construction of the courts in the State of his domicile." And it further held: "It is a familiar rule of law that the right of succession to the estate of a deceased person, whether he leaves a will or dies intestate, depends upon the law of his domicile. The settlement of his estate and the disposition of his property are to be made in accordance with the law of that place. * * * But such probate of a will or such administration of an intestate estate is always nearly ancillary. It is not for the purpose of establishing rights of succession, whether under a will or otherwise. Those are to be established in the courts of the State or country where the deceased person had his domicile."

The Probate Court of Hampshire county had jurisdiction to make a distribution, but when it proceeded to make a distribution contrary to the laws of succession of this State it acted without authority, and its order making such distribution is not conclusive upon the courts of this State.

By section 21 of chapter 141 of the Revised Laws of Massachusetts it is provided that if the Probate Court finds that a partial distribution of the personal property of an estate can without detriment be made to the persons thereto, it may, subject to the rights of creditors and *after notice,* order such partial distribution to be made. We do not find from an. examination of the laws introduced in evidence that there is any provision as to what such notice shall consist of, or how it shall be made. The record of the proceedings of said Probate Court show an order was entered citing all persons interested to show cause on the fifth day of November, A. D. 1912, why said application of the ancillary administrator for distribution should not

be allowed, and further ordered that said administrator serve said citation by publishing the same, once in each week, for three consecutive weeks in a certain newspaper and *by mailing post paid a copy thereof to each person interested* in the estate fourteen days before said date. The proof of service of this citation is as follows: ''I have served the foregoing citation as therein ordered by publication in Daily Hampshire Gazette, Sept. 3, 9 and 16, and by mailing post paid a copy thereof to each and every one of the persons interested in said estate. Sept. 4, 1912. (Signed) John C. Hammond.'' This is sworn to by said Hammond. Who said Hammond is does not appear. The persons to whom the citation was mailed do not appear, nor does it appear who the persons were that said Hammond considered interested in the estate. It must be conceded that there should be proof at least that the order of the court directing notice had been complied with. Even though publication was made in the newspaper, if process was not served or notice given as required by the order, the court did not acquire jurisdiction of the parties and the order of distribution was void. *Goudy v. Hall*, 30 Ill. 109; *Forrest v. Fey*, 218 Ill. 165. The affidavit of said Hammond was wholly insufficient to prove service of said citation. While the order of distribution itself states: ''All persons interested in the matter of said petition having had *due notice* of said petition, etc.,'' this cannot cure the defective service where the record itself does not show that notice was given as required by law. Jurisdiction does not attach where it is shown that the facts upon which the court acted were insufficient to support the finding of jurisdiction, and the recital on the face of the order that due notice was given makes no difference. *Whitney v. Porter*, 23 Ill. 445; *Hemmer v. Wolfer*, 124 Ill. 435; *Forrest v. Fey, supra*. While it is true that the Illinois executor appeared and objected to the entering of the order of distribution yet he, by so doing, could not confer jurisdiction on said Probate

Court over the persons interested in the estate. He was not a beneficiary under the will, nor had any interest thereunder except to faithfully discharge the duties of his trust as executor. No action of his could submit the persons of appellants to the jurisdiction of that court. The proof of service of the citation was insufficient to give said court jurisdiction of the persons of appellants.

But even if the facts established the jurisdiction of said Probate Court over the persons of appellants, the order of said court was but an error of law, and ancillary administration is but auxiliary to the principal administration and is subordinate thereto. 1 Bouvier Law Dict. The estate of the testatrix was an entity; she did not leave two estates. An error made in the distribution of personal assets in an ancillary administration can be corrected in the distribution of the principal estate. Appellees having received a larger share than they were entitled to by the order of distribution made by the Probate Court of Massachusetts, in equity and good conscience should be required to account for the excess over their proper shares in the final distribution of the principal estate. The executor of the principal estate has made no distribution and has sufficient funds in his hands to rectify the error made, and we can see no good reason why the court should not order this to be done, so as to give to each party interested that portion of the entire estate to which he is entitled. *Ramsay v. Ramsay*, 196 Ill. 179.

The decree of the Circuit Court must therefore be reversed and the cause remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*