## WILL OF WARD.

*November 22 — December 13, 1887.*

*Married women: Wills: Implied revocation.*

During her second marriage a woman made a will giving her property to the children of her first marriage. She afterwards married again, and died leaving her third husband surviving. She had no issue by either the second or third marriage. *Held*, that, under the statutes giving to married women the absolute right to dispose of their property, the will was not revoked by the third marriage. [Whether the marriage would have revoked a will made in favor of a stranger, not determined.]

APPEAL from the Circuit Court for *Sauk* County.

An instrument in writing executed in the name of Ann Lee Spaulding was presented to the county court of Sauk county as the last will and testament of Ann Ward, deceased, together with the petition of *Edward Lee*, a son and

heir at law of the deceased, praying that the same be admitted to probate.    The petition further stated that Thomas Lee, one of the executors named in the will, had in writing declined to accept the trust, and that, for reasons given, *Hiram Lee,* the other executor named, was an improper person to act as such; and it was prayed that letters of administration with the will annexed be issued to one William Drinkwater.

After a hearing the county court held that the will had been revoked by the subsequent marriage of the testatrix to Charles Ward, and that she therefore died intestate; and the said William Drinkwater was appointed administrator of her estate.    From the order or judgment of the county court, *Hiram Lee,* one of the executors named, appealed to the circuit court.    The findings of fact and conclusions of law by the latter court are thus stated by Mr. Justice CASSODAY:

"It is, in effect, found by the circuit court that several years prior to 1870 the deceased, Ann Ward, married one Thomas Lee, and by him had seven children, all of whom are now living and of full age; that in 1870 said Thomas Lee died, leaving said Ann him surviving; that the estate of which the said Ann was possessed at the time of her death came to her through the last will and testament of the said Thomas Lee; that thereafter the said Ann married one John Spaulding; that June 23, 1877, and during such coverture, the said Ann, in the name of "Ann Lee Spaulding," duly executed the paper writing here propounded as her last will and testament, in the presence of three attesting witnesses, each of whom, at her request and in her presence and in the presence of each other, subscribed the same as such witnesses; that two of her sons were nominated and appointed as executors therein, and her property was therein given to all of her children except one; that said John Spaulding died in 1880, leaving said Ann him surviving; that in 1882

said Ann married one Charles Ward; that in 1885 the said Ann died in Racine county, where she was domiciled at the time, leaving her surviving the said Charles Ward; that said Ann never had any children or child by either the said Spaulding or Ward; that said Drinkwater, mentioned in the order and judgment of the county court, was never related to the said Ann.

As conclusions of law, it was found by said circuit court that said will was not revoked by said subsequent marriage to said Charles Ward (as ordered and adjudged by the county court), and that said Ann Ward died testate, and that *Hiram Lee*, executor of said last will and testament, is entitled to judgment that said order and judgment of the county court be reversed with costs."

From the judgment entered accordingly, *Edward Lee*, *Thomas Lee*, *Richard Lee*, and *Mary Hamlet*, children and heirs at law of Ann Ward, deceased, have appealed to this court.

*John Barker*, for the appellants, contended, *inter alia*, that marriage alone works a revocation of a woman's will, though there is no issue by such marriage. 1 Redf. Wills, 293; 1 Jarman on Wills (5 Am. ed.), 268; *In re Carey*, 49 Vt. 236. Coverture at the time of making the will does not change this rule. 1 Redf. Wills, 293; 1 Jarman on Wills (5 Am. ed.), 276; *Douglas v. Cooper*, 3 Mylne & K. 378; *Christopher v. Christopher*, 2 Dick. 445; *Baldwin v. Spriggs*, 65 Md. 373; *Havens v. Van Den Burgh*, 1 Denio, 27. In the case of a woman, marriage, and in the case of a man, marriage and the birth of issue, are the only changes of circumstances, since the statute of frauds, which work an implied revocation of a will. *Delafield v. Parish*, 1 Redf. Sur. 105; 1 Jarman on Wills (5 Am. ed.), 268–282; 1 Redf. Wills, 293–302; *Hoitt v. Hoitt*, 63 N. H. 475; *Warner v. Beach*, 4 Gray, 162; *Webster v. Webster*, 105 Mass. 538; *Johnston v. Johnston*, 1 Phill. 447; *Wogan v. Small*, 11

Serg. & R. 141–145; *Vandemark v. Vandemark*, 26 Barb. 416; *Baillet's Appeal*, 14 Pa. St. 451; *Hawes v. Humphrey*, 9 Pick. 350; *Brydges v. Duchess of Chandos*, 2 Ves. Jr. 428. The statutes of Arizona, Massachusetts, Michigan, Minnesota, Nebraska, New Hampshire, and Vermont are substantially the same, in regard to an implied revocation, as sec. 2290, R. S. These statutes have been construed only in New Hampshire and Massachusetts. In the latter state it is held that this provision as to implied revocation has substantially the force of an express enactment of the rules of the common law. See Schouler on Wills, 424, 425; *Swan v. Hammond*, 138 Mass. 45; *Blodgett v. Moore*, 141 id. 75; *Nutt v. Norton*, 142 id. 245; *Brown v. Clark*, 77 N. Y. 369; *Loomis v. Loomis*, 51 Barb. 257; *Jones v. Moseley*, 40 Miss. 261; *Sneed v. Ewing*, 5 J. J. Marsh. 471; *Duryea v. Duryea*, 85 Ill. 41. Even though the testatrix could make another precisely similar will after her marriage, the law should presume that marriage is such a change in her life and moral and legal duties as to induce a change in her testamentary intentions.

For the respondent there was a brief by *Hand & Flett*, and oral argument by *Mr. Hand*. To the point that the marriage of a *feme sole* does not revoke her will made before such marriage, they cited, besides cases cited in the opinion, *Morgan v. Ireland*, 1 Idaho (N. S.), 786.

CASSODAY, J. The testatrix made her will while she was the wife of Spaulding. By it she gave her property to six of her children by a former marriage. After his death she married Ward. She never had any children by either of them. Did such marriage to Ward revoke her will thus made? This is the only question presented which it is necessary to consider. The county court held that it did. The circuit held that it did not, and reversed the judgment.

After prohibiting the revocation of any will otherwise

than by burning, tearing, canceling, or obliterating the same, or by some other writing, executed as prescribed, substantially as required by sec. 6, ch. 3, 29 Car. II. (3 Eng. Stats. at Large, 385), our statute adds: "Excepting only that nothing contained in this section shall prevent the revocation *implied by law* from subsequent *changes in the condition or circumstances* of the testator." Sec. 2290, R. S. This section, with the above exception, first appeared in sec. 10, ch. 66, R. S. 1849, which went into effect January 1, 1850. "The revocation implied by law," thus excepted out from the operation of the prohibitory clause of the section by reason of such precaution, manifestly means such as had previously been implied at common law. At common law the marriage of a woman was a revocation of her will previously made. *Forse's Case*, 2 Coke, 439; *Hodsden v. Lloyd*, 2 Brown, Ch. 534; *Doe v. Staple*, 2 Term R. 695. This was put upon the grounds of the husband's marital rights, the ambulatory character of a will, and the disability of the wife. Thus Lord Chancellor THURLOW, after considering the rights of the husband over the property of his wife, said: "It is extremely clear that no such will made by a *feme covert* can bind after the marriage, because it is contrary to the nature of the instrument, which must be ambulatory during the life of the testatrix; and as by marriage she disables herself from making any other will *the instrument ceases to be of that sort,* and must be void." *Hodsden v. Lloyd, supra.*

But the common-law rule that marriage of a woman revoked her will previously made was not without exceptions. Thus, where her power of disposing of her separate property after marriage was preserved by an antenuptial agreement, her will previously made was not revoked by such marriage. 1 Sugd. Powers, 182–190; *Wright v. Englefield*, 1 Amb. 468; *Rippon v. Dawding*, 2 Amb. 565; *Rich v. Beaumont*, 6 Brown's C. P. 152; *Churchill v. Dibben*, 2

---

Will of Ward.

---

Keny. pt. 2, p. 82; *Logan v. Bell*, 50 Eng. C. L. (1 Man., G.
& S.), 872; *Doe v. Bird*, 2 Nev. & M. 679; *Downes v.
Timperon*, 4 Russ. 334; *Dillon v. Grace*, 2 Schoales & L.
456; *Braddish v. Gibbs*, 3 Johns. Ch. 523; *Barnes v. Irwin*,
2 Dall. 199, 1 Yeates, 221.

The power which at common law might thus be preserved
to a married woman by marriage settlement to dispose of
her property during coverture, has been expressly preserved
to married women in this state by statute ever since Feb-
ruary 1, 1850. Laws of 1850, ch. 44, secs. 1–3; ch. 95, R. S.
1858; secs. 2340–2343, R. S. This must be qualified to the
extent of saying that she could not dispose of her property
by last will and testament, without the consent of her hus-
band, until March 23, 1859. Sec. 1, ch. 66, R. S. 1849; sec.
1, ch. 97, R. S. 1858; sec. 2, ch. 91, Laws of 1859. But since
that time she has had the absolute power of disposing of her
property in that way without his consent, and even against
his wish. Secs. 2277, 2281, R. S. The rights and powers
thus secured to married women by the statutes remove every
reason upon which the common-law rule of revocation by
such subsequent marriage was based, and hence such rule
by implication is removed by the same statutes. The reason
for the rule having ceased to exist, the rule itself also ceased.
This is in accordance with a well-settled maxim of the law.
Regardless of that principle, it has been held in Massa-
chusetts that the marriage of a woman revoked her will
previously made, notwithstanding such statutes. *Swan v.
Hammond*, 138 Mass. 45, 52 Am. Rep. 255; *Blodgett v. Moore*,
141 Mass. 75. Such ruling was based, apparently, upon the
fact that the statute there, as here, prescribes the modes of
revoking wills and recognizes revocation implied by law.
But the old English statute cited also prescribed such modes
of revoking wills, without such express recognition. It is
true, nevertheless, such revocations were implied notwith-
standing, among other reasons, for those stated above. As

observed, the statutes of this state thus removing the reasons, to that extent removed the rule. The fact that such rule at common law was based upon the husband's marital rights, the ambulatory character of the will, and the disability of the wife, seems to be recognized in a later case in Massachusetts, wherein it is, in effect, held that revocation of a woman's prior will by marriage was prevented by an antenuptial agreement barring such rights and removing such disability and preserving such powers. *Osgood v. Bliss,* 141 Mass. 474. To hold that marriage of itself revoked a former will of the wife, under the circumstances here presented, as above stated, when the next day after the marriage she had power to reinstate the same writing as her last will and testament, would seem to be absurd. The conclusions we have reached are supported by the great weight of authority of our sister states under similar statutes. *In re Tuller's Will,* 79 Ill. 99; *Noyes v. Southworth,* 55 Mich. 173; *Webb v. Jones,* 36 N. J. Eq. 163; *Fellows v. Allen,* 60 N. H. 439, 49 Am. Rep. 329; *Hoitt v. Hoitt,* 63 N. H. 475; *Morton v. Onion,* 45 Vt. 145; *In re Carey's Estate,* 49 Vt. 236.

Whether, in view of our statutes making husband and wife heir to each other in the absence of children, marriage of itself would revoke a former will in favor of a stranger, as seems to have been held in an early Illinois case qualified in the above citation from that state, we are not here called upon by the facts to consider. We must hold that the common-law rule mentioned, when applied to the facts of this case, has by implication been abrogated by our statutes.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 35 N. W. Rep. 731.— REP.