WILLIAM HASTINGS, Appellee, v. W. R. DAY, Appellant.

Wills: RATIFICATION: SUBSEQUENT MARRIAGE OF TESTATRIX. The mere
fact of marriage will not operate to revoke the will of a wife
previously made.

*Appeal from Van Buren District Court.*—HON. D. M.
ANDERSON, Judge.

WEDNESDAY, MARCH 8, 1911.

PROCEEDINGS for the probate of the will of Mary E.
Hastings, deceased. Trial was had to the court upon an
agreed statement of facts. Judgment admitting the will
to probate, and the contestant appeals. *Affirmed.*

*Newbold & Newbold* and *J. C. Calhoun,* for appellant.

*Walker & McBeth,* for appellee.

WEAVER, J.—Mary E. Hastings died in the month
of September, 1909, without living husband or lineal heirs,
and leaving a will executed September 25, 1876, by the
terms of which William M. Hastings, her stepson, was
made the sole beneficiary of her estate. The instrument
having been filed for probate, certain collateral heirs ap-
peared and contested the same on the grounds: (1) That
after the execution of said will the testatrix contracted a
valid marriage with one Cyrus Harlan, who has since died,
and that said marriage operated, as a matter of law, to
revoke the previous testamentary disposition of her estate.
(2) That the making of the will was procured by the
fraud and undue influence of William M. Hastings. (3)

That the said testatrix was at said date of unsound mind. The cause being reached for the trial, the contestant dismissed the second and third grounds of this contest, and the cause was submitted to the court without a jury upon an agreed statement of facts, which we quote in full as follows:

Agreed statement of facts was filed and signed by the attorneys for both parties and in words and figures as follows:

In the above-entitled cause the contestant hereby dismisses both the second and third grounds of his contest, being contests on the grounds of undue influence and unsoundness of mind. And the cause shall be submitted to and determined by the court upon the said proposed and alleged will and the following agreed statement of facts; and the filing of this agreement shall give the statements hereinafter contained the force and effect, and become a part of the record, the same as if introduced in evidence in the usual manner.

(1) That the alleged will, to which this agreement is attached and which was filed in this court, opened and read by the clerk of this court on the 29th day of September, A. D. 1909, is the true and correct proposed will of decedent, and the same was properly executed and attested on the date mentioned therein, and should be allowed as the last will of decedent, unless revoked by operation of law on the first ground of the contest, namely, that the decedent had contracted a valid marriage after the execution of the said will.

(2) That the said W. R. Day, contestant, is a nephew of said decedent, and if said will is not valid would be one of the heirs at law of said decedent, and is entitled to contest said will; he being the son of a deceased sister of said decedent.

(3) That the said Mary E. Hastings at the time of the execution of the proposed will was the widow of John C. Hastings, who died on or about the 24th day of December, 1875. And that the said Will Hastings named in said will as the sole legatee and executor thereunder is a son of John C. Hastings, and a stepson of the decedent, and is the proponent of said will.

(4) That the decedent and said Will Hastings lived together after the death of John C. Hastings up to the time of the marriage of decedent with Cyrus Harlan.

(5) That on or about the year 1885 the decedent and Cyrus Harlan were legally married and lived together as husband and wife up to the death of said Cyrus Harlan on or about the 3d day of February, 1899.

(6) That no issue was ever born to the said decedent, the maker of said proposed will.

(7) That said decedent died on or about the —— day of September, A. D. 1909, leaving personal and real property of the value of $5,000 or more.

(8) That the proponent offers said will for probate, and the contestant objects thereto, claiming that the said will has been revoked by operation of law by reason of the above facts.

The trial court held that the marriage of the testatrix did not operate as a revocation of her will, and from this ruling and the judgment admitting the instrument to probate, an appeal has been taken.

Counsel for appellant have been diligent in the collection of authorities, and make a very forcible presentation of the view that at common law the marriage of a woman worked the revocation of a will previously made by her, and that as we have no statute abolishing or superseding that rule it should be recognized and given effect by the courts. While it is true, speaking generally, that in the absence of a statute upon a given question or proposition, our courts will recognize and enforce the rules and principles of the common law, it is equally true that they often refuse so to do, where the reasons giving rise to the rule no longer exist, or where the principle sought to be applied is unsuitable to our own social or political conditions, or not in harmony with the policy and objects of our own peculiar institutions. *Wagner v. Bissell,* 3 Iowa, 396; *Ex parte Holman,* 28 Iowa, 88; *Pierson v. Lane,* 60 Iowa, 60. The common law rule for which appellant contends has certainly never had specific or express recognition in

Iowa, so far, at least, as appears from our recorded decisions; and before taking that step we should be careful to inquire whether its introduction into our legal system will be in accord with the policy of the state as reflected in its statutes and in the rules of property and property rights which have already been settled by judicial determination.

That there is or may be such a thing as the revocation of a will by implication, growing out of a change of conditions and circumstances, need not here be denied, though the Legislature of this state and the Legislatures of other states have made frequent attempts to abolish, or, at least, to restrict such will within narrow limits. Code, section 3276; Code Supp. 1907, sections 3276, 3279. Before the statute providing for after-born and posthumous children, we held that the birth of a child to a testator after the making of a will worked a revocation (*McCullum v. McKenzie,* 26 Iowa, 510), though why, as an original question, it should have been given any greater effect that to open up the will and permit the after-born child to share in the estate is not easily explainable; but the Legislature having since made provision for the protection of such children by admitting them to share in the testator's estate, the amount of their claims being taken ratably from the devisees and legatees named in the will, the rule of *McCullum v. McKenzie* is no longer the law of this state.

But counsel say that, admitting all this, we have no statute of analogous character with respect to the effect of marriage upon a will previously made, and that the common law principle which constrained us to that ruling requires us now to say that the marriage of Mrs. Hastings revoked her will. But the logic of the proposition is grounded upon the truth of assumptions we can not admit. It may be admitted for the purposes of this case that it was a general rule of the common law that the marriage of a woman operated to revoke any will or wills previously executed by her. The reason of this rule was found

in that other common law rule by which, if we may be
allowed the expression, a woman's legal existence and per-
sonality were upon marriage merged in or absorbed by
her husband. She could no longer buy, sell, or deal as a
separate, responsible individual. With his title to his wife,
the husband acquired title to the control, use, and enjoy-
ment of all her estate, and thenceforth she touched the
world of property, and business through him alone. It was
therefore thought inconsistent that her will, which was
ambulatory during the life of the maker and continued in
existence from day to day only by her continuing desire
or purpose, should retain any vitality after her legal inde-
pendence and power to act for herself had been surrendered
in marriage. Whether a flaw may be found in this line
of reasoning we need not inquire. It is enough that it
satisfied the courts of that time, and the rule for which
appellant contends was established. But it was subject to
at least one exception which has substantial bearing upon
the issue in the present case. If, before entering the mar-
riage relation, the wife's interests had been protected by
an antenuptial agreement or settlement by which she re-
tained the right to control, manage, and dispose of her
separate property and estate, then her marriage did not
operate to revoke her will, if any she had made. *Bradish
v. Gibbs*, 3 Johns. Ch. (N. Y.) 523; *Logan v. Bell*, 50
E. C. L. 872; *Downes v. Timperson*, 4 Russ. 334. The
rule thus having its foundation in the disabilities of
coverture with respect to the ownership and control of prop-
erty, and the right to contract with reference thereto, and
not being applicable where those disabilities are removed
by antenuptial contract, it follows of necessity that, if the
same disabilities are removed by statute and a wife is
legally empowered to make a valid will of her separate
estate, her marriage will not be held to revoke a will pre-
viously executed. It is a clear case for the application
of the maxim that a rule ceases to be obligatory when the

reason for it ceases. This view of the law is well argued by Start, C. J., in *Kelly v. Stevenson,* 85 Minn. 247. See, also, *Noyes v. Southworth,* 55 Mich. 173 (20 N. W. 891, 54 Am. Rep. 359); *Ward's Will,* 70 Wis. 251 (35 N. W. 731, 5 Am. St. Rep. 174); *Fellows v. Allen,* 60 N. H. 439 (49 Am. Rep. 328); *Hunt's Will,* 81 Me. 275 (17 Atl. 68).

In several of the states here named there are statutes expressly recognizing the implied revocation of wills as at common law, yet their courts all unite in holding that statutes emancipating the wife from common law disabilities as to property and property rights, and conferring upon her authority to make a valid will, have the effect to abrogate the rule under which marriage was held to revoke a former will. There are a few cases cited by appellant which seem to be authority for the opposite view, though in each instance there is ground for saying that the decision is, to a greater or less degree, influenced by the statute law of the particular jurisdiction. In any event, if such holdings sustain the view that, notwithstanding the complete emancipation of women from the disabilities of coverture, the common law rule which revokes her prior will is still applicable, we are not impressed with the logic or force of the reasoning by which that conclusion is reached, and we prefer to adhere to the doctrine of the precedents to which we have made reference.

Nor do we concede controlling force to the other suggestion of counsel that under our statute the husband is, under certain conditions, the heir of his deceased wife and as such may inherit a fraction of her estate. To so hold is to unduly extend the principle by which the birth of a child and prospective heir of the testator was held to work a revocation. The birth of a child gives rise to a common law obligation to provide for its care and support, at least during its minority, and endows the child with a moral right under ordinary circumstances to expect

recognition in the distribution of its parent's estate. The wife is under no common law obligation for the support of her husband, and the law has provided for each a fixed share in the other's estate which can not be taken away or diminished by will or other act of his or her spouse. Subject to that right, each may, by will, freely dispose of all the rest of his or her estate to others, and under our statute it is only in case of failure to thus devise or bequeath the entire estate over and above the dower or statutory provision for a surviving spouse that he or she takes anything whatever by way of inheritance. Code, section 3379; *Clark v. Griffith,* 4 Iowa, 405; *Dobson v. Dobson,* 30 Iowa, 410.

These contestants are collateral heirs who had no natural or statutory claim upon the testatrix, save to demand and receive property, if any, which she had not otherwise disposed of, and unless there be some imperative principle of law which requires us so to hold, it would be strangely unreasonable to say that because the will, made before her marriage, might, if enforced, unfavorably affect her husband's interests, her own collateral relatives, who take nothing from or through the husband, could take advantage of that fact and draw the estate to themselves, although the husband died before she did, and, so far as we know, was perfectly contented to permit the will to stand and have effect according to its terms.

Again, as already suggested, the law of this state has removed all restrictions and disabilities growing out of the marriage relation, so far, at least, as they relate to the disposition of property by will, save only as expressed in the statute itself. Code, section 3270. It is there provided that "any person of full age and sound mind may by will dispose of all his property subject to the rights of homestead and exemption created by law and the distributive share in his estate given by law to the surviving spouse." Having thus conferred full power to dispose of

their property by will upon all persons, male and female, of full age and sound mind without distinction between the married and unmarried, subject only to certain expressed exceptions, among which cases of this kind are not included, we can conceive of·no sound principle upon which we may narrow its scope or restrict its meaning, or nullify a will validly made under the authority which it confers, by resorting to an ancient rule which is alien to our policy, and which had its root and growth in a doctrine confessedly no longer having place or recognition in our legal system. Had the court ever committed itself to that theory of the law, we should perhaps feel bound to follow it until its manifest wrong was remedied by appropriate legislation, but we are unfettered by any such precedent, and to now establish one would be a long step backwards in the path of progress.

The question whether the fact that under the statute a wife may (under some circumstances) inherit from her husband a share in addition to dower would be sufficient to revoke the husband's will, made previous to the marriage, was before the Minnesota court in *Hulett v. Carey,* 66 Minn. 327 (69 N. W. 31, 34 L. R. A. 384, 61 Am. St. Rep. 419), and decided in the negative. If that decision be sound, and we so regard it, then in this state, where the rights and powers of husband and wife as to the disposition of their individual estates are in all respects equal, the same rule must be observed in disposing of appellant's objection to the probate of the will in controversy. In other words, there is under our statute no room for any distinction by which we may say that marriage alone does not revoke the prior will of a husband, but it does have that effect upon the prior will of the wife. What we have said renders unnecessary further review of the cases cited in argument.

The ruling of the trial court was right, and its judgment is *affirmed.*